UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                              Case Number 19-20195

v.                                            Honorable David M. Lawson

ELLIOT JAMES GIBSON,

        Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Elliot Gibson has filed a motion asking the Court to "resentence[e] [him] to early release" under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Gibson has served about six months of a 120-month prison sentence for conspiring to distribute cocaine and heroin. He argues that a sentence reduction is justified by his medical conditions (rheumatoid arthritis and asthma) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. The government opposes any sentence reduction. Because Gibson has not demonstrated extraordinary circumstances justifying immediate release, the factors in section 3553(a) do not favor release, and he does not qualify for release under any other provision of section 3582(c)(1), the motion will be denied.

I.

Gibson pleaded guilty to conspiring to possess with intent to distribute and distributing over five kilograms of cocaine and over one kilogram of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), b(1)(A). On January 21, 2020, the Court sentenced the defendant to the mandatory minimum prison term of 120 months, to be followed by five years of supervised release. The Court extended Gibson's surrender date twice, and he surrendered to the custody of the Bureau of

Prisons (BOP) on June 25, 2020. He presently is confined at Lompoc USP in California, which is a medium-security facility that houses around 1,200 inmates. Public records of the BOP indicate that the defendant is scheduled to be released from prison on September 30, 2028. Gibson is 53 years old.

Gibson previously moved for compassionate release on October 6, 2020, but the Court denied the motion without prejudice because the defendant had not yet exhausted his administrative remedies within the BOP. Gibson's attorney then submitted an administrative request for compassionate release on September 1, 2020. No response was received. The defendant then re-filed a motion for compassionate release on November 12, 2020, again under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. In his motion, Gibson argued that he qualifies for release because his rheumatoid arthritis and asthma render him more susceptible to severe complications if he were to contract Covid-19. The government opposes the motion, contending that Gibson has not demonstrated extraordinary and compelling reasons to reduce his sentence, and the factors in 18 U.S.C. § 3553(a) do not support early release.

The most recent data disclosed by the BOP for Lompoc USP indicate that there are three active coronavirus cases among inmates and six among staff. Moreover, 205 inmates and 36 staff members previously were diagnosed and now have recovered. Reports indicate that two inmates have died from the virus. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of

the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Gibson relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not

the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, --- F.3d ---, No. 20-3654, 2021 WL 50169 (6th Cir. Jan. 6, 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 2021 WL 50169 at *1 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at *2. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Gibson argues that his medical conditions expose him to elevated risk of complications from the highly-contagious novel coronavirus. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19

(because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise.  If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020).  "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.  And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself.  For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain personal characteristics face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), *People Who Are At Risk for Severe Illness*, Ctrs. for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).

Here, neither the defendant's arthritis nor asthma provides an extraordinary or compelling reason for his release. The defendant relies on a letter provided by his treating physician, who states that the defendant suffers from "severe cases of Rheumatoid Arthritis and Bronchial Asthma," and that arthritis-related inflammation "led to temporary paralysis" and affected his "lungs, eyes, and heart." The CDC identified "moderate" to "severe" asthma as a condition that "might" increase one's risk of severe infection. *People Who Are at Risk for Severe Illness, supra.* However, the defendant's BOP records do not reflect that he suffers from asthma at all; BOP staff reported that his lungs were clear, Medical Records, ECF No. 157, PageID.814, 816, and in June and July 2020, the defendant denied any breathing problems, *id.* at PageID.798, 801, 836. He does not take any asthma medication. *Id* at PageID.834. Thus, even if the defendant does suffer from asthma, his medical records do not support a finding that it is "moderate" or "severe."

In her letter to the Warden at Lompoc, defense counsel represented that "Gibson has asthma, and sickle cell disease," a condition among those with the "strongest and most consistent evidence" of severe illness from COVID-19. *Scientific Evidence for Conditions that Increase Risk of Severe Illness*, Ctrs. for Disease Control and Prevention (Nov. 2, 2020), https://bit.ly/34aDRY6.

However, neither the defendant's doctor's letter nor his prison medical records indicate that the defendant suffers from sickle cell disease, and he did not raise it in his motion.

Finally, the government contends that the CDC does not recognize arthritis as a condition that increases one's risk of COVID-19-related complications. Although that is correct, the CDC found "mixed evidence" that the "use of corticosteroids or other immunosuppressive medications" increases the severity of a COVID-19 infection. *Ibid.* The defendant takes prednisone, a common corticosteroid, to treat his arthritis. Considering the CDC's mixed evidence, the effect of the defendant's medication is unclear. *See, e.g., Several Steroids May Also Help Battle COVID-19*, WebMD (July 23, 2020), https://wb.md/3oR3eFZ (suggesting that prednisone may help treat inflammation from COVID-19 but the steroid "might backfire" on patients who do not exhibit systemic inflammation). But at most, the defendant presents mixed evidence that he is at a heightened risk of a severe infection should he contract COVID-19.

C.

Nonetheless, even if the defendant were able to establish extraordinary medical risk, early release is not justified in this case because the relevant section 3553(a) factors weigh heavily against discharging him into the community.

The government insists that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, pointing to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument, however, is a dead letter after the Sixth Circuit's decision in *Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion.").

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Gibson's crime is serious. He sold heroin and cocaine, which are among some of the most addictive and potentially fatal controlled substances. And this is Gibson's fourth conviction for drug dealing; his other convictions involved crack cocaine, marijuana, and firearms.

The Court determined at the time of sentencing that the 120-month prison sentence was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a). One of those goals — protection of the public — was paramount in this case. Since his incarceration just a few months ago, Gibson already received a disciplinary report for being in an unauthorized area and failing to follow safety regulations. Discipline Report, ECF No. 156-4. The Court plainly imposed a sentence that was not greater than necessary to achieve congressional goals. Releasing Gibson after he served less than 10% of his sentence would not promote respect for the law or provide a just punishment for the defendant's crime. Nor would it serve as a significant deterrent to others; to the contrary, it severely would undermine the goals of both specific and general deterrence, which is of particular concern with a defendant who has demonstrated his enterprising resourcefulness in flouting the law.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs decidedly in this case against granting any reduction of Gibson's sentence, and those factors foreclose relief, even in light of the outbreak of COVID-19 at Lompoc USP. The defendant's arthritis medication may increase his risk of severe COVID-19 infection. But his conduct both leading to his indictment and afterward in prison cast doubt on his intentions to be law abiding and conform to the norms of society. On similar facts, notwithstanding an inmate's demonstration of elevated medical risk, federal courts readily have denied compassionate release motions by defendants who were convicted of serious drug crimes and had served only small portions of their sentences. *E.g.*, *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *4 (E.D. Mich. Dec. 9, 2020); *United States v. Douglas*, No. 16-20436, 2020 WL 7225773, at *4 (E.D. Mich. Dec. 7, 2020); *United States v. Benge*, No. 12-59, 2020 WL 5845892, at *4 (E.D. Ky. Oct. 1, 2020); *United States v. Myers*, No. 18-20633, 2020 WL 4934343, at *3 (E.D. Mich. Aug. 24, 2020). There are no facts apparent in this record suggesting that a different outcome is warranted here.

### III.

Gibson has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 148) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: January 26, 2021